UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SIDNEY CANCIENNE** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 10-1318** |
| **METROPOLITAN LIFE INSURANCE COMPANY** | * | **SECTION "L"(3)** |

### ORDER AND REASONS

The Court has before it two cross-motions for summary judgment filed by Plaintiff Sidney Cancienne (Rec. Doc. 24) and Defendant Metropolitan Life Insurance Company (Rec. Doc. 25). The Court has considered the briefs and the applicable law and now issues the following Order and Reasons.

### I.  BACKGROUND

This case arises out of a denial of benefits to the Plaintiff for the amputation of his left foot. The facts are not disputed. Plaintiff was employed as a captain for thirty years by Seacor Marine, LLC. In connection with his employment, Plaintiff was covered by an employee benefits plan which included accidental death or dismemberment coverage underwritten and administered by Defendant MetLife. The plan is governed by ERISA.

On July 15 or 16, 2007, Plaintiff accidentally stepped on a nail in a parking lot on his way to work. The wound became infected and eventually resulted in amputation of his left foot below the knee on August 3, 2007. The record is undisputed that Plaintiff is diabetic and had been diagnosed as such before his accident.

Plaintiff sought benefits under the accidental death or dismemberment plan. MetLife denied the claim, relying on two provisions in the plan. First, MetLife cited Section A, which

defines the scope of coverage:

> A.   Coverage
> We will pay Accidental Death or Dismemberment Benefits for a Covered Loss shown in Section C if you are injured in an accident which occurs while you are covered for Accidental Death or Dismemberment Benefits; and if
> 1.   that accident is the sole cause of the injury; and
> 2.   that injury is the sole cause of that Covered Loss; and
> 3.   that Covered Loss occurs not more than one year after the date of that accident.

(Rec. Doc. 18-1 at 35-36). Second, MetLife cited Section D, which contains a number of exclusions from coverage:

> D.   Exclusions
> We will not pay for any Covered Loss shown in Section C if it in any way results from, or is caused or contributed to by:
> 1.   physical or mental illness, diagnosis of or treatment for the illness; or
> 2.   an infection, unless it is caused by an external wound that can be seen and which was sustained in an accident . . . .

(Rec. Doc. 18-1 at 38). MetLife concluded that Plaintiff's diabetes contributed to the infection which made amputation necessary. Plaintiff was notified of the denial of his claim in a letter dated March 6, 2008. The denial cited both Section A and Section D.

Plaintiff requested review of the denial. In connection with the review, MetLife obtained a medical review of the claim. The administrative appeal record contains a Medical Referral Form from Dr. Derrick Bailey, dated April 22, 2008. (Rec. Doc. 18-2 at 54-56). On the form, Dr. Bailey was asked several yes-or-no questions. First, in response to the question, "To a reasonable degree of medical certainty, is it your opinion that the loss was a direct result of an injury, independent of other causes?" Dr. Bailey checked the "NO" box. Second, in response to the question, "To a reasonable degree of medical certainty, is it your opinion that the loss was caused or contributed to by: Physical or mental illness, diagnosis of or treatment for the illness [or] An infection, unless it is caused by a [sic] external wound that can be seen and which was

sustained in a [sic] accident." Dr. Bailey checked the "YES" box. Third, in response to the question "As the medical records provided show that the insured had a medical condition, to a reasonable degree of medical certainty, is it your opinion that this medical condition caused or contributed to the dismemberment?" Dr. Bailey checked the "YES" box.

On the basis of this medical review, MetLife upheld its denial of benefits in a letter dated May 28, 2008. Counsel for Plaintiff requested additional review and supplemented the administrative record with additional materials from Plaintiff's treating physician, Dr. Daniel Hake. Dr. Hake emphasized that Plaintiff's injury was caused by stepping on a nail at work. Dr. Hake did not opine regarding the role Plaintiff's diabetes played in contributing to the loss. In a letter dated July 28, 2008, MetLife again upheld its denial and explained that Plaintiff had exhausted his administrative remedies. Plaintiff later filed suit in this Court.

## II.     PRESENT MOTIONS

The parties have filed opposing motions for summary judgment. Plaintiff contends that MetLife, as claims administrator, abused its discretion in denying his claim because the loss of his leg was caused by an infection which was caused by the injury to his foot, and is therefore covered by the terms of the plan. MetLife has filed an opposing motion, arguing that it did not abuse its discretion because the administrative record supports the conclusion that Plaintiff's diabetes contributed to the infection that caused the amputation.

## III.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

A district court can grant a motion for summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24, and Fed. R. Civ. P. 56). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249 - 50 (citations omitted).

**B.     Review of a Plan Administrator's Determination**

A district court reviews "an administrator's denial of ERISA benefits for abuse of discretion 'if an administrator has discretionary authority with respect to the decision at issue.'" *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007) (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999)). The parties agree that MetLife was expressly given discretionary authority to interpret the plan and to administer benefits in accordance with those terms. Accordingly, the abuse-of-discretion standard of review applies.

The Fifth Circuit has adopted "a two-step analysis in determining whether a plan

4

administrator abused its discretion in construing plan terms." *Pylant v. Hartford Life & Accident Ins. Co.*, 497 F.3d 536, 540 (5th Cir. 2007) (citing *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999)). First, a court must determine "the legally correct interpretation of the plan and whether the administrator's interpretation accords with that interpretation." *Id.* (citing *Rhorer*, 181 F.3d at 639). If "the administrator has not given the plan the legally correct interpretation, we determine whether the administrator's interpretation constitutes an abuse of discretion." *Id.* (citing *Rhorer*, 181 F.3d at 640). "A substantial factor in determining whether the administrator's interpretation is a legally correct interpretation is whether the interpretation is 'fair and reasonable.'" *Id.* (quoting *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 344 (5th Cir. 2002)).[1]

The Court also reviews MetLife's factual determinations for abuse of discretion. "In applying the abuse of discretion standard to an administrator's factual determinations we analyze whether the administrator acted arbitrarily or capriciously." *Dutka v. AIG Life Ins. Co.*, 573 F.3d 210, 213 (5th Cir. 2009). "If the determination is supported by substantial evidence, it is not arbitrary and capricious." *Id.* "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted). Weaknesses in the evidence supporting the decision do not mean that the administrator abused its discretion. *See id.*

---

[1] Where the plan administrator both evaluates and pays claims, a court can consider that potential conflict of interest in reviewing any claim determination. *See Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247-48 & n.3 (5th Cir. 2009). However, such a conflict does not change the level of deference. *See id.* Here, MetLife was both the plan administrator and underwriter. However, Plaintiff has not articulated how, if at all, that dual role impacted the claim determination, and accordingly the Court gives this factor no weight.

**C.     Analysis**

In this case, MetLife correctly interpreted and applied the terms of the plan and reached factual conclusions supported by substantial evidence in the administrative record. MetLife correctly denied Plaintiff's claim because it was not within the scope of coverage and because it also fell within an exclusion to coverage.

First, according to the plain language of the plan, benefits are payable only if the accident is the sole cause of the injury and the injury is the sole cause of the loss. In this case an accident undoubtedly occurred when Plaintiff stepped on a nail. The accident undoubtedly was the sole cause of an injury, the wound to Plaintiff's foot; Plaintiff's diabetes had nothing to do with stepping on the nail. Therefore the accident solely caused the injury and the first requirement for coverage is satisfied. However, the plan also requires that the injury be the sole cause of the loss. The loss in this case was the amputation of Plaintiff's foot. Substantial evidence in the record, including Dr. Bailey's report, supports the conclusion that Plaintiff's pre-existing diabetes combined with or otherwise accelerated the infection caused by the injury to make amputation necessary. Indeed, the record is devoid of any evidence that Plaintiff's diabetes did not contribute to the infection and eventual amputation; in his opposition, Plaintiff states that "the Diabetes was a contributing factor in the infection being a severe infection." (Rec. Doc. 28 at 6). Thus, substantial evidence supports MetLife's conclusion that the injury *and* Plaintiff's diabetes were both causes of the amputation. The injury was not the sole cause of the loss, and therefore the loss was not covered under the plan. MetLife's interpretation of Section A of the plan was legally correct and its factual determinations are supported by the administrative appeal record.

Second, denial of Plaintiff's claim was also correct under the first exclusion in Section D,

prohibiting recovery if a loss "in any way results from, or is caused or *contributed to* by ... physical or mental illness." (Rec. Doc. 18-1 at 38) (emphasis added). For the same reasons explained above, the record supports MetLife's conclusion that Plaintiff's diabetes contributed to the need for amputation. Thus, his physical illness contributed to the loss and the exclusion in section D would prevent recovery under the plan even if the loss were covered.

    Plaintiff's arguments to the contrary misinterpret the plan language. Essentially, Plaintiff contends that stepping on the nail was an accident which caused an injury, and the injury resulted in amputation of Plaintiff's leg, so that loss should be covered. Although that causal chain is correct, it is incomplete. Plaintiff ignores that under the plan, coverage exists only if the injury is the *sole* cause of the loss. The record supports MetLife's conclusion that the amputation (the loss) would not have occurred without the infection *and* Plaintiff's diabetes.

    Plaintiff also argues that the infection exclusion in Section D somehow creates coverage for his loss. Section D provides that a loss is not covered if "it in any way results from, or is caused or contributed to by ... an infection, unless it is caused by an external wound that can be seen and which was sustained in an accident." Plaintiff's infection was undoubtedly caused by the external wound to his foot, and accordingly the carveout to the infection exclusion would preserve Plaintiff's claim, if it were not independently excluded by other terms of the plan. But the fact that this single exclusion does not apply cannot affirmatively create coverage where none otherwise exists. As explained above, MetLife correctly interpreted and applied the terms of the plan and did not abuse its discretion in concluding that the amputation did not fall within the scope of coverage, and was additionally excluded by the physical illness exclusion. Plaintiff's selective quotation of Dr. Bailey's report notwithstanding, these conclusions are supported by substantial evidence in the record, and the infection exclusion simply does not

factor into the analysis.

Plaintiff also argues that the Court should consider additional evidence not presented to MetLife before it reviewed the denial of benefits. On April 22, 2010, nearly two years after MetLife issued the final denial of Plaintiff's claim and approximately two weeks before filing this suit, counsel for Plaintiff mailed to MetLife an excerpt from the deposition of Plaintiff's treating physician taken in a separate litigation. The doctor opined regarding the puncture wound to Plaintiff's foot that became infected. MetLife did not render another decision on Plaintiff's claim in light of that additional evidence before suit was filed.

The administrative record "is generally limited to 'relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it.'" *McDonald v. Hartford Life Group Ins. Co.*, 361 Fed. App'x 599, 606 (5th Cir. 2010) (quoting *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 215 F.3d 516, 521 (5th Cir. 2000). The Court need not decide whether this additional material is properly part of the administrative record because, even if included, it does not address or affect MetLife's basic factual determination: that Plaintiff's diabetes contributed to the necessity of amputating his foot. Indeed, the deposition actually buttresses MetLife's decision because Plaintiff's doctor opined that patients with diabetes are "more susceptible to an infection after a puncture wound." (Rec. Doc. 18-3 at 12).[2]

## IV. CONCLUSION

As set forth above, MetLife correctly interpreted the terms of the accidental death or dismemberment plan. MetLife also properly concluded that Plaintiff's diabetes combined with

---

[2]Those same materials also indicate that Plaintiff received $150,000 to settle a lawsuit filed against his employer.

his injury to necessitate amputation of his foot.  MetLife did not abuse its discretion in denying Plaintiff's claim for benefits.  Accordingly, Plaintiff's motion for summary judgment is DENIED and MetLife's motion for summary judgment is GRANTED.  Plaintiff's claims are dismissed with prejudice.

   New Orleans, Louisiana, this 10th day of January, 2011.

_____
UNITED STATES DISTRICT JUDGE